## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHRISTOPHER MAYA CABALLERO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 25-CV-0442-CVE-MTS** |
| | ) | |
| **TRAVIS BRASWELL, Individually,** | ) | |
| **KYLE ADMIRE, Individually,** | ) | |
| **DUSTIN TINER, Individually,** | ) | |
| **BETHANY HIBBS, Individually** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is a motion for partial dismissal (Dkt. # 13) by defendants Bethany Hibbs, Dustin Tiner, Travis Braswell, and Kyle Admire, as to two claims brought by plaintiff Christopher Maya Caballero. In his complaint, plaintiff alleges nine claims for relief arising out of alleged actions of defendants, all of whom are law enforcement officials, during his arrest. Dkt. # 2-2. Defendants seek to dismiss two of plaintiff's nine claims: the claim for unlawful arrest, in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983 (count one); and the claim for common law false arrest/false imprisonment (count six). Dkt. # 13, at 1; Dkt. # 2-2, ¶¶ 93-96, 110-12. Defendants move to dismiss the claim of unlawful arrest on the grounds that probable cause existed for plaintiff's arrest, as determined by the Creek County District Court, that defendant's plea of <u>nolo contendere</u> precludes the claim, and that defendants are entitled to qualified immunity as a matter of law. Dkt. # 13, at 6, 7. Defendants move to dismiss the claim of false arrest/false imprisonment on the bases that: false arrest is precluded because plaintiff will be unable to prove that officers effectuating his arrest lacked probable cause, which constitutes a total defense, <u>id.</u> at 10; and false imprisonment applies only to detentions by private

citizens for a private end, and not to law enforcement officials who lawfully arrested plaintiff, id. at 9.

## I.

On July 13, 2024, plaintiff was arrested by the Creek County Sheriff's Office following an altercation at his sister and brother-in-law's home in Bristow, Oklahoma. Dkt. # 2-2, ¶ 7. Plaintiff alleges that the arrest in question began after he and his brother-in-law got into a verbal argument, which led to his sister to call the police. Id. ¶¶ 7-8. Plaintiff's sister and his brother-in-law told law enforcement officials that plaintiff had a gun that he had been waving around. Id. ¶ 10. Defendants, Officers Travis Braswell, Kyle Admire, Dustin Tiner, and Bethany Hibbs of the Creek County Sheriff's Office, responded to the call. Id. ¶ 9. Plaintiff first spoke to Officer Admire, who was standing in the front yard of plaintiff's sister's home, while plaintiff was talking on his cell phone in the backyard. Id. ¶ 14. Plaintiff announced his intention to come through the house, entering through the back door. Id. Plaintiff alleges that several officers "entered the home aggressively and drew guns on [p]laintiff while shouting at him," demanding that he put his gun down while shouting from around the corner of a hallway. Id. ¶¶ 16-19. Plaintiff eventually complied, after which he and the officers "had a calm conversation in the kitchen for approximately 15 minutes about the argument that led to officers being called." Id. ¶ 21. However, during the conversation, an "onslaught of one-sided violence which continued for over seven and a half minutes" began, unprompted. Id. ¶ 25. According to plaintiff, the officers tased, punched, kicked, tackled, stunned, restrained, and beat him using a baton. See generally id. ¶¶ 26-74. While several officers continued to beat plaintiff, they allowed Thanos, a police K-9 unit, to attack him. Id. ¶¶ 56-62. Meanwhile, plaintiff was "beg[ging] on his knees for water" and complying with the officers' demands to the

2

extent he was physically able.  Id. ¶¶ 73-76.  Plaintiff was then transferred into a patrol vehicle, at which time he was placed in handcuffs and stripped down to his underwear and shoes.  Id. ¶¶ 80-83. One officer "pulled the front of [p]laintiff's underwear down and out and appeared to grab or otherwise touch [p]laintiff's groin region."  Id. ¶ 84.  Officers reportedly "found white powdery substance and a glass pipe during a pat search."  Id. ¶ 86.  Plaintiff states that no warrant had been issued for his arrest at that time.  Dkt. # 27, at 8.

Plaintiff was transported to a hospital for medical examination before being taken to jail.  Id. ¶ 87.  Plaintiff alleges that the medical examination revealed that he had been bitten by a dog and suffered from several broken bones.  Id. ¶ 89.  Plaintiff was then transported to jail and charged with six misdemeanors: threatening to perform an act of violence to his sister and brother-in-law; possession of controlled dangerous substances; unlawful possession of paraphernalia; obstruction of a police officer; resisting arrest; and carrying a firearm while under the influence.  Id. ¶¶ 91-92. Plaintiff was also charged with four felonies: assault and battery on Officer Braswell; assault and battery on Officer Admire; mistreating a police dog; and knowingly intending to transfer HIV to Officer Braswell.  Id.  The four felony charges were subsequently dismissed.  Id.  Two months after plaintiff's arrest, a judge of the Creek County District Court held a preliminary hearing and determined, when viewing the evidence "in the light most favorable to the state, the state . . . met its burden of proof and that there [was] probable cause to believe a crime ha[d] been committed and that

3

[plaintiff had] committed that crime."[1] Oklahoma v. Caballero, No. CF-24-91 (Okla. Creek Cnty. Sep. 27, 2024) (capitalization altered).  Plaintiff subsequently entered a plea of nolo contendere as to the remaining six misdemeanor counts.  Id., No. CF-24-91 (Okla. Creek Cnty. June 3, 2025).

One month later, plaintiff filed a petition in the District Court of Creek County, Oklahoma, alleging nine causes of action arising from the events in question: unlawful arrest; use of excessive force; supervisor liability; common law assault; common law battery; common law false arrest/false imprisonment; common law intentional infliction of emotional distress; negligence; and negligence per se.  Id. ¶¶ 93-123.  Defendant Bethany Hibbs removed the action to this Court, pursuant to 28 U.S.C. § 1441, et seq.  Dkt. # 2, at 1.  Defendants Hibbs, Tiner, Braswell, and Admire ("defendants") now move for partial dismissal of plaintiff's claims, specifically seeking dismissal of counts one and six: one claim for unlawful arrest, and one common law claim of false arrest/false imprisonment.  Dkt. # 13, at 1.  Plaintiff responded (Dkt. # 27), and defendants replied (Dkt. # 29). The motion is ripe for review.

---

[1] Defendants' motion to dismiss, Dkt. # 13, plaintiffs' response, Dkt. # 27, and defendants' reply, Dkt. # 29, reference and discuss documents and entries related to the Creek County Court criminal docket sheet for Oklahoma v. Caballero, No. CF-24-91 (Okla. Creek Cnty. Aug. 1, 2025).  Defendants request that the Court take judicial notice of the docket sheet, and attached a copy of it to their motion.  Dkt. # 13-3.  In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), a court is limited to considering the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); see also Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  Federal courts routinely "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979).  Plaintiff's plea directly relates to defendant's argument for dismissal as to both claims, and the Court will take judicial notice of plaintiff's criminal records in Oklahoma v. Caballero, No. CF-24-91 (Okla. Creek Cnty. July 16, 2025).

## II.

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted.  To survive a motion under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Tenth Circuit has interpreted the plausibility requirement to mean that if the allegations contained in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Okla. ex. rel. Dep't of Hum. Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570).  The allegations must also "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim to relief." Id. (footnote omitted).  Put differently, for a claim to survive a Rule 12(b)(6) motion, there must be "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly, 550 U.S. at 555); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) ("A motion to dismiss under Fed. Rules Civ. Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir.

2006) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). The facts alleged "must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2004)). For the purposes of making a dismissal determination, a court must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the claimant. Iqbal, 556 U.S. at 678-79.

### III.

Defendant seeks dismissal of two of plaintiff's nine claims. First, defendants move to dismiss plaintiff's claim for unlawful arrest under 42 U.S.C. § 1983. Dkt. # 13, at 1; Dkt. # 2-2, ¶ 96. Next, defendants move to dismiss plaintiff's claim for common law false arrest/false imprisonment. Dkt. # 13, at 1; Dkt. # 2-2, ¶¶ 111-12.

### A.    Section 1983 Claim for Unlawful Arrest (Count One)

Plaintiff's claim for unlawful arrest arises under § 1983. Section 1983 creates a cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; Becker v. Kroll, 494 F.3d 904, 913 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must make two showings: first, he must allege "the violation of a right secured by the Constitution and laws of the United States," and second, he must "show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). With respect to the first showing, an arrest can give rise to a violation of the Fourth Amendment to the Constitution if the arresting officer lacks probable cause for a warrantless arrest. Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010) ("Generally, a warrantless arrest

is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime."); Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) ("We analyze the constitutionality of a warrantless arrest under the probable cause standard. A police officer may arrest a person without warrant if he has probable cause to believe that person committed a crime" (citations omitted)). Conversely, a claim for unlawful arrest is precluded if "the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." Stoneciper v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014)  see also Smith v. Barber, 316 F. Supp. 2d 992, 1021 (D. Kan. 2004) ("A false arrest claim will fail where probable cause exists for at least one of the charges against a plaintiff in a § 1983 claim"). "Probable cause to arrest exists where, 'under the totality of the circumstances,' a 'reasonable person' would believe 'that an offense has been . . . committed' by 'the person arrested.'" United States v. Martin, 613 F.3d 1295, 1302 (10th Cir. 2010) (quoting United States v. Muoz-Nava, 524 F.3d 1137, 1144 (10th Cir. 2008)); see also Jones v. City & Cnty. of Denv., 854 F.2d 1206, 1210 (10th Cir. 1988) ("Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee had committed or is committing an offense."); United States v. Lopez, 777 F.2d 543, 551 (10th Cir. 1985) ("Probable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer."). The inquiry is an objective, not subjective one, that simply requires a showing of probable cause for "some offense." Morris v. Noe, 672 F.3d 1185, 1192-93 (10th Cir. 2012) (emphasis in original). Moreover, "probable cause" is not a "precise quantum of evidence" but rather "something 'more than a bare suspicion.'" Stoecipher, 759 F.3d at 1141 (quoting Kerns v. Bader, 663 F.3d 1173, 1188 (10th Cir. 2011)).

Plaintiff asserts that his Fourth, Eighth, and Fourteenth Amendment rights and his rights under Oklahoma statutes, specifically OKLA. STAT. tit. 22 §§ 191, 193, and 199, were violated by defendants during the course of the arrest. Dkt. # 2-2, ¶¶ 93-96. Defendants move to dismiss on the basis that probable cause existed at the time of the arrest, which precludes plaintiff from bringing a claim for unlawful arrest. Dkt. # 13, at 5 (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Defendants raise three arguments on this point. Dkt. # 13. First, the Creek County District Court determined that probable cause existed for the warrantless arrest, which both "conclusively demonstrates" that probable cause existed at the time of arrest and "must be given preclusive effect by a federal district court." Id. at 6 (citing Allen v. McCurry, 449 U.S. 90, 95-96 (1980)). Second, because plaintiff entered a nolo contendere plea to six of the ten counts for which he was arrested, plaintiff is precluded from asserting that his arrest was without probable cause. Id. at 8. Third, because probable cause existed at the time of the arrest, defendants are entitled to qualified immunity as a matter of law. Id. at 7.

### i.    Scope of Arrest

Before addressing whether probable cause existed for the arrest at issue, plaintiff argues that defendants' burden is to show that probable cause existed for the physical arrest, which plaintiff believes took place when Officer Tiner first grabbed and tackled him, as well as for each discrete use of force between plaintiff's first encounter with law enforcement and being handcuffed, seven and a half minutes later. Dkt. # 27, at 11-13; see also Dkt. # 2-2, ¶ 24. Plaintiff characterizes the interaction as a series of seizures to which he voluntarily submitted. Dkt. # 27, at 11, 22. Plaintiff asserts that "[e]ach and every one of those voluntary submissions to a show of authority is a seizure that must be supported by probable cause to be a lawful arrest." Id. at 12. Defendants counter that

8

"it is simply inaccurate to portray each use of force by the officers in attempting to arrest [p]laintiff as being new, separate 'arrests' requiring their own independent probable cause analyses," as the conduct "clearly consisted of one attempt to subdue and arrest [p]laintiff." Dkt. # 29, at 2.

The Tenth Circuit has identified "three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000) (citing United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir. 1984)).   Arrests, the most extreme type of encounter, are "characterized by highly intrusive or lengthy search or detention," which requires "probable cause to believe a crime has been committed by the arrestee." Id. (first quoting Cooper, 733 F.2d at 1363, then citing Romero, 45 F.3d at 1476).  "[T]he probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."  Romero, 45 F.3d at 1476-77 (footnote omitted).  "While there is no litmus-paper test for determining when an investigative detention enters the realm of an arrest," the Tenth Circuit has stated that "an arrest is distinguished from an investigative detention 'by the involuntary, highly intrusive nature of the encounter,'" as evidenced by the "use of firearms, handcuffs, and other forceful techniques." Lundstrom v. Romero, 616 F.3d 1108, 1120 (10th Cir. 2010) (quoting Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc)); but see Torres v. Madrid, 592 U.S. 306, 317 (2021) ("We stress, however, that the application of the common law rule does not transform every physical contact between a government employee and a member of the public into a Fourth Amendment seizure.  A seizure requires the use of force with intent to restrain." (emphasis in original)).  Although there is no "litmus-paper test" as to when an investigative determination begins, neither party contests that the interaction turned from

a "lawful investigative detention" into an arrest after Officer Tiner allegedly tackled plaintiff in the kitchen of his sister's home.  Dkt. # 27, at 12; Dkt. # 29, at 2.

By contrast, plaintiff and defendants do not agree about the scope of the arrest—whether the entire interaction constituted a single arrest or a successive series of seizures demarcated by plaintiff's voluntary submission to each of the officers' commands.  Compare Dtk. # 27, at 12 ("Each and every one of those voluntary submissions to a show of authority is a seizure that must be supported by probable cause to be a lawful arrest."), with Dkt. # 29 ("The officers' conduct clearly consisted of one attempt to subdue and arrest [p]laintiff.").  Plaintiff argues that even though the interaction resulted in a single arrest, "[s]ince there is no such thing as an ongoing arrest, each use of force is its own arrest."  Dkt. # 27, at 12.  Plaintiff cites no law to support this conclusion. Plaintiff attempts to illustrate his point by comparing this case to United States v. Dye, 544 F. Supp. 3d 1138 (D. Kan. 2021), appeal dismissed, No. 21-3117, 2021 WL 6197124 (10th Cir. July 7, 2021), in which a man was stopped by police near a bus station and ordered to raise his hands, at which time the man paused, raised his hands, and then sprinted away, dropping a firearm as he fled.  Dkt. # 27, at 10 (citing Dye, 544 F. Supp.3d at 1147-48).  The court in that case held that because the suspect complied with the officer's order before fleeing, the fleeting interaction constituted a seizure, for which reasonable suspicion was necessary but had not been established, and therefore the firearm was inadmissible as fruit of the poisonous tree.  Id. at 1159.  There, the seizure at issue consisted, in toto, of an officer commanding the suspect to raise his hands or let the officer see his hands and the suspect complying before he almost immediately "made a run for it."  Id. at 1145.  Here, plaintiff offers no argument as to which facts indicate that the initial seizure terminated (e.g., by "ma[king] a run for it" or some other means) and a new seizure commenced prior to his arrest.  Plaintiff instead

alleges facts to indicate that the seizure began with Officer Tiner tackling plaintiff and ended in plaintiff's arrest, that lasted, as plaintiff underscores, for "over 7 ½ minutes," Dkt. # 27, at 13, 18, 22. Certainly, the facts alleged indicate that the officers' orders to plaintiff evolved during the course of those seven and a half minutes—from ordering plaintiff to give the officers his hands, to ordering him to roll over, turn over, stop, get on his stomach, put his hands behind his back, stop kicking the dog, give the officers his arms, and roll over again. See, e.g., Dtk. # 2-2, ¶¶ 30, 36, 40, 42, 46, 56, 61, 69, 72. However, plaintiff cannot point to a single moment in which the seizure terminated, when a reasonable person would have believed that he was free to leave, before a new seizure commenced, when "a reasonable person would have believed that he was not free to leave." California v. Hodari D., 499 U.S. 621, 627-28 (1991) (emphasis added).

Plaintiff also attempts to support his broad assertions using Torres v. Madrid, 592 U.S. 306 (2021), in which the Supreme Court announced a "narrow" rule that "a seizure by force—absent submission—lasts only as long as the application of force." Id. at 318. In other words "the Fourth Amendment does not recognize any 'continuing arrest during the period of fugivity.'" Id. (emphasis altered) (quoting Hodari D., 499 U.S. at 625). Operative here is the term "fugitivity," meaning the state of running away or intended flight. See Fugitivity, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/fugitivity (last visited Jan. 11, 2025). Although plaintiff quotes this line from Torres and interprets it to mean that "each seizure of [p]laintiff's person" after the initial tackling necessitates an individual showing of probable cause, plaintiff indicates neither when each seizure began and ended nor what facts show that a "period of fugivitiy" actually began. Dkt. # 27, at 13. Nowhere does plaintiff allege that he fled or attempted to flee the home, nor that he even resisted any of the officers' demands, which were, as plaintiff characterized

them, continuous.  Dkt. # 2-2, ¶ 25 ("This began an onslaught of one-sided violence which continued for over seven and a half minutes.").  Moreover, Torres and another case plaintiff cites for this proposition, California v. Hodari D., 499 U.S. 621 (1991), address how "the government 'takes possession' of a person or object at a single moment in time," but "like Hodari D., Torres simply does not address the question whether the prohibition on 'unreasonable seizures' applies only for a single moment or for the duration of the government's possession." Asinor v. District of Columbia, 111 F.4th 1249, 1258 (D.C. Cir. 2024).  The D.C. Circuit has interpreted Torres to mean that even if a seizure does not constitute a single, continuous act, that "does not mean there is no continuing seizure when the police continue to hold a person or property in custody." Id.

Plaintiff neither provides any basis to conclude that more than one seizure took place, nor offers sufficient support for the supposition that a seizure comprising of multiple acts in quick succession creates multiple seizures all of which necessitate individual showings of probable cause. Accepting as true the facts alleged, the Court finds that the seizure at issue began once Officer Tiner tackled plaintiff in the kitchen at the beginning of the interaction and continued through the time of plaintiff's arrest.  Thus, the issue before the Court is whether probable cause existed for the one seizure.

### ii.    Issue Preclusion

Defendants' first argument for establishing probable cause flows from the observation that "[i]n the instant matter, the state court tribunal which adjudicated the underlying criminal case against [p]laintiff determined that probable cause existed in support of the arrest in question in this

case." Dkt. # 13, at 6 (citing Dkt. # 2-3, <u>Oklahoma v. Caballero</u>, No. CF-24-91 (Okla. Creek Cnty. July 11, 2025)). Defendants make two arguments as to this Court's obligation to make findings thereupon.

First, defendants argue that the underlying record "conclusively demonstrates" that probable cause existed at the time of arrest and therefore the Court must hold that as a matter of law probable cause existed at the time of the arrest. <u>Id.</u> Although the Court may and has taken judicial notice of the criminal docket, a public record, associated with the arrest at issue in this case, "[t]he documents may only be considered to show their contents, not to prove the truth of the matters asserted therein." <u>Tal</u>, 453 F.3d at 1264 n.24 (first alteration in original) (quoting <u>Oxford Asset Mgmt., Ltd. v. Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002)). Moreover, the record in the instant matter cannot be said to "conclusively demonstrate" that probable cause existed at the time of the arrest. Dkt. # 13, at 6. Before the Court is an exhibit that includes one docket entry regarding probable cause, which states that on September 27, 2025, the county court held a preliminary hearing and determined, when viewing the evidence "in the light most favorable to the state, the state . . . met its burden of proof and that there [was] probable cause to believe a crime ha[d] been committed and that [plaintiff had] committed that crime." <u>Oklahoma v. Caballero</u>, No. CF-24-91 (Okla. Sep. 27, 2024) (capitalization altered). As the docket offers no actual evidence or facts that indicate why the court found there to be probable cause, defendants' first argument fails to show that as a matter of law, plaintiffs cannot state a claim on which relief can be granted with respect to the § 1983 claim for unlawful arrest.[2]

---

[2] On this point, defendants respond that "even if the ruling at the preliminary hearing does not conclusively establish that the initial decision to arrest was supported by probable cause, the facts alleged in the [complaint] do." Dkt. # 29, at 4-5. Defendants offer only a legal conclusion and do not indicate which specific facts contained in, or omitted from, the complaint support their argument. This would suggest a dispute of fact, which would preclude dismissal under Rule 12(b)(6).

Second, defendants argue that the determination reached by the Creek County District Court as to the finding of probable cause "must be given preclusive effect by a federal district court." Dkt. # 13, at 6 (citing Allen, 449 U.S. at 95-96; Hubbert v. City of Moore, 923 F.2d 769, 772-73 (10th Cir. 1991)). The Tenth Circuit in Hubbert v. City of Moore, 923 F.2d 769 (10th Cir. 1991), interpreted Allen v. McCurry, 449 U.S. 90 (1980), to stand for the proposition that "a federal court considering a section 1983 claim must give preclusive effect to a state court judgment to the same extent a court in that state would." Id. at 772 (emphasis added); see also Miller v. Glanz, 989 F.2d 507 (10th Cir. 1993) (unpublished table decision)[3] ("The Supreme Court has held that issues decided in state criminal proceedings are collaterally precluded from relitigation in subsequent § 1983 civil suits." (citing Allen, 449 U.S. at 103-04)). Since the Tenth Circuit " gives full faith and credit to state court judgments," "[t]he preclusive effect of a state-court decision in a § 1983 action filed in federal court is a matter of state law." Wilkinson v. Pitkin Cnty. Bd. of Cnty. Commrs., 142 F.3d 1319, 1322 (10th Cir. 1998). Therefore, the Court must look to Oklahoma law to determine whether plaintiff is precluded from relitigating the issue of whether probable cause existed.

Under Oklahoma law, an issue is precluded if it "was actually litigated and determined in the prior action between the parties or their privities, and . . . the determination was essential to the decision in the prior action." Miller v. Miller, 956 P.2d 887, 897 (Okla. 1998); see also Fent v. Okla. Nat. Gas Co., 898 P2d 126, 133 (Okla. 1994) ("Under the doctrine of issue preclusion (or collateral estoppel), once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought upon a different claim." (footnote

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

omitted)).  Although in the context of issue preclusion there "need not be a prior adjudication on the merits (as is often the case with res judicata)," an important prerequisite for issue preclusion is that there needs to be "a final determination of a material issue common to both cases."  Okla. Dep't of Pub. Safety v. McCrady, 176 P.3d 1194, 1199 (Okla. 2007) (emphasis omitted).  Importantly, issue preclusion cannot be used to bar a litigant from pursuing an issue "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Adamson v. Dayton Hudson Corp., 774 P.2d 478, 480 (Okla. Civ. App. 1989) (quoting Allen, 449 U.S. at 95); see also Fent, 898 P.2d at 133.  The party seeking the preclusion bears the burden of showing that the issue was actually litigated and determined, that determination involved the parties or their privities, that it was essential to the determination, and the "party against whom the earlier decision is interposed had a 'full and fair opportunity' to litigate the critical issue in the previous case."  Miller, 956 P.2d at 898.

Oklahoma courts have repeatedly held that disputing the existence of probable cause in a civil action arising out of an arrest is precluded when, at the preliminary hearing, the criminal defendant is bound over for trial and had a full and fair opportunity to litigate the issue.  See, e.g., Adamson, 774 P.2d at 480 (precluding a plaintiff from relitigating issues of probable cause that had been determined at a preliminary hearing); James v. Sw. Ins. Co., 354 P.2d 408, 412 (Okla. 1960) (holding that the issue of probable cause for an arrest was precluded based on findings from plaintiff's preliminary hearing, at which he was bound over for trial); Christopher v. Circle K Convenience Stores, Inc., 937 P.2d 77, 79 (Okla. 1997) (affirming a trial court's grant of summary judgment on the basis that plaintiff was precluded from relitigating the issue of probable cause following a preliminary hearing binding over plaintiff for trial); Lee v. Knight, 771 P.2d 1003, 1006 (Okla. 1989)

15

(affirming a grant of partial summary judgment because plaintiff was estopped from relitigating probable cause, which had been previously determined in the conviction proceeding); Danner v. Diller Dep't Stores, Inc., 949 P.2d 680, 682 (Okla. 1997) ("Thus, the finding of probable cause at preliminary hearing provides a complete defense to a civil action based on the arrest."). The Tenth Circuit—applying Oklahoma law on issue preclusion in the context of a civil action, following a preliminary hearing in which an Oklahoma state court found there to be probable cause for an arrest—has also held that the doctrine of issue preclusion can bar relitigating whether probable cause existed at the time of arrest. See e.g., Hubbert v. City of Moore, 923 F.2d 769, 773 (10th Cir. 1991). However, the mere fact of an Oklahoma state court's determination that probable cause existed does not, unto itself, mandate preclusion. See id.; Tucker v. City of Oklahoma City, No. 11-CV-922, 2012 WL 12848198, at *2-3 (W.D. Okla. Sep. 20, 2012). For example, the Tenth Circuit in Bell v. Dillard Department Stores, Inc., 85 F.3d 1451 (10th Cir. 1996), found that an Oklahoma state court's determination from a preliminary hearing that probable cause existed could not be given preclusive effect because the minute entry on which the defendant relied was not signed by a municipal court judge, which an Oklahoma law at the time required to give a ruling preclusive effect, and because the court could not conclude from the record before it that the plaintiff had been given a "full and fair opportunity to litigate the probable cause issue in municipal court." Id. at 1454. As the Oklahoma Supreme Court has stated: "[I]n Oklahoma the question of probable cause is conclusively determined at a preliminary hearing when the parties have had a full and fair opportunity to litigate the issue. Collateral estoppel cannot apply when a party did not have a full and fair opportunity to litigate the issue." Christopher, 937 P.2d at 79 (emphasis added). Put differently, although under Oklahoma law the findings from a preliminary hearing may preclude subsequent relitigation of the

16

existence of probable cause at the time of an arrest, <u>Christopher</u>, 937 P.2d at 79, the issue of whether probable cause existed at the time of arrest cannot be precluded unless the proponent of preclusion shows that at the preliminary hearing the existence of probable cause was actually litigated and determined, by the parties or their privities, as an essential part of the determination, and the other party had "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action," <u>Danner</u>, 949 P.2d at 682 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28 (A.L.I. 1982)); <u>see</u> <u>also</u> <u>Durham v. McDonald's Restaurants of Okla., Inc.</u>, 256 P.3d 64, 66-67 (Okla. 2011); <u>Miller</u>, 956 P.2d at 898; <u>Salazar v. City of Oklahoma City</u>, 976 P.2d 1056, 1061 n.7 (Okla. 1999).

At this stage, defendants have not shown that all four requirements for issue preclusion under Oklahoma law are met. Defendants state that at the preliminary hearing, probable cause was determined to exist, which they further support with the text of the minute entry from that hearing. Dkt. # 13, at 2-3. However, defendants neglect to address whether plaintiff had "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." <u>Danner</u>, 949 P.2d at 682 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28 (A.L.I. 1982)). Defendants support their argument using three cases, one of which applies New York law. Dkt. # 13, at 6-7 (citing <u>Allen</u>, 449 U.S. at 95-96; <u>Hubbert</u>, 923 F.2d at 772-73; <u>Zanghi v. Inc. Vill. of Old Brookville</u>, 752 F.2d 42, 46 (2d Cir. 1985)). In each of these cases, the courts note that the prior proceeding must be shown to have been fully and fairly litigated in order for the court to give it a preclusive effect. <u>Hubbert</u>, 923 F.2d at 773 ("We hold no genuine issue of material fact remains because probable cause was fully and fairly litigated in the prior criminal proceeding and cannot be relitigated in this civil action."); <u>Zanghi</u>, 752 F.2d at 46 ("Zanghi has failed to show that he did not have a full and fair

17

opportunity to litigate the ultimate issue of probable cause.")[4]; Allen, 449 U.S. at 95 ("But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case.").  Defendants offer only a docket entry and ask the Court to conclude that this issue is precluded under Oklahoma law.  On these grounds, the Court has no way to discern whether the Oklahoma court's determination gave plaintiff a "full and fair opportunity" to litigate the issue of probable cause.  However, defendants offer a separate argument on this point, which may overcome their deficient showing as to the grounds required for estoppel.

### iii.    Nolo Contendere Plea

Defendants argue that any irregularities or infirmities in the preliminary hearing process are inherently waived by plaintiff's entry of a plea of nolo contendere as to the charges at issue and therefore preclusion is warranted.  Dkt. # 13, at 8.  According to the Oklahoma state court docket, of which the Court has taken judicial notice, plaintiff entered a plea of nolo contendere on the six misdemeanor charges that followed from the arrest at issue here.  Oklahoma v. Caballero, No. CF-24-91 (Okla. Creek Cnty. June 3, 2025).  In Oklahoma, a plea of nolo contendere "has the same legal affect as a guilty plea," Morgan v. State, 744 P.2d 1280, 1281 (Okla. Crim. App. 1987), and that plea "estop[s] the defendant from later disputing the validity of those charges on a basis to deny the existence of probable cause for his arrest." Jackson v. Loftis, 189 F. App'x 775, 779 (10th

---

[4] In that case, the plaintiff appealed a district court's determination that the issue was preclusive given that the relevant showing was made under New York law, which includes the fact that he had "a full and fair opportunity to litigate the ultimate issue of probable cause." Zanghi, 752 F.2d at 46.  On appeal, the plaintiff bore the burden of making the requisite showing that the issue had been unlawfully precluded.  Id.

Cir. 2006) (unpublished) (citing Irwin v. SWO Acquisition Corp., 830 P.2d 587, 590 (Okla. Civ. App. 1992); Delong v. Oklahoma, 956 P.2d 937, 938-39 (Okla. Civ. App. 1998)); Chammat v. Fallis, No. 13-CV-206-JED-PJC, 2014 WL 916749, at *2 (N.D. Okla. Mar. 10, 2014); see also United States v. Cartwright, 678 F.3d 907, 916 (10th Cir. 2012) ("[A] nolo contendere plea in Oklahoma admits the validity of the charge . . . ."); Rose v. Uniroyal Goodrich Tire Co., 291 F.3d 1216, 1220 (10th Cir. 2000) ("[A]lthough a plea of nolo contendere has the same legal effect as a guilty plea, it is not a factual admission to the underlying crime." (emphases in original)) . While there is a "proscription on the use of nolo contendere pleas in subsequent civil proceedings, that proscription applies only to '"offensive" use . . . to establish the criminal defendant's subsequent potential civil liability, not to . . . "defensive" use . . . in a case where the criminal defendant [has] sought to recover damages for alleged unlawful arrest.'" Jackson 180 F. App'x at 779 (alterations in original) (citations omitted) (quoting Delong, 956 P.2d at 938) (citing OKLA. STAT. tit. 12, § 2410; OKLA. STAT. tit. 22, § 513); see also Rose, 219 F.3d at 1220 ("There are two primary reasons behind holding nolo pleas inadmissible . . . [b]oth [of which] . . . assume a situation in which the criminal defendant is being sued in a later civil action, and the plea is offered as proof of guilt."). As defendants seek to use the fact of plaintiff's plea "defensively," the two statutory proscriptions on the use of nolo contendere pleas in subsequent civil proceedings, OKLA. STAT. tit. 12 , § 2410; OKLA. STAT. tit. 22, § 513, do not apply here.

Plaintiff argues that in order for a nolo contendere plea to have a preclusive effect on subsequent civil proceedings, it requires a "combination of a nolo contendere plea and supportive evidentiary material." Dkt. # 27, at 12-22 (emphases in original). Plaintiff reaches this conclusion through his interpretation of Delong v. Oklahoma, 956 P.2d 937 (Okla. Civ. App. 1998), in which

the Oklahoma Court of Civil Appeals determined that "evidentiary material, uncontroverted as it [was], coupled with the admission of facts and waiver of irregularities affected by entry of [the plaintiff's] nolo contendere plea, establish[d] the arresting officer's probable cause to initially stop and arrest [the plaintiff], and absent evidentiary material to the contrary, [was] fatal to her claim of false arrest." Id. at 939; see also Dkt. # 27, at 22.  Plaintiff concludes that because "there has been no evidentiary material to support the initial tackling of [p]laintiff being supported by probable cause," the nolo contendere plea is insufficient by itself to estop plaintiff from raising issues related to probable cause.  Dkt. # 27, at 22.  Defendants respond that although supportive evidentiary material may be used to supplement a court's conclusion that probable cause existed at the time of arrest, Delong does not require that "the nolo plea . . . be supplemented with additional evidence for it to have preclusive effect on a civil claim for false arrest."  Dkt. # 29, at 8.

On this point, the Court agrees.  Although the court in Delong discussed supplemental evidentiary material that supported its findings, the court based its holding on its application of Irwin v. SWO Acquisition Corp., 830 P.2d 587 (Okla. Civ. App. 1992), to the facts before it.  956 P.2d at 938.  In Irwin the Oklahoma Court of Civil Appeals adopted the Sixth Circuit's holding in Walker v. Schaeffer, 854 F.2d 138, 142 (6th Cir. 1988), that "pleas in state court made by defendants and the finding of guilt and imposition of fines by that court estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause."  Irwin, 840 P.2d at 590 (quoting Walker, 854 F.2d at 142).  Neither in Irwin nor in Walker did those courts base their findings on "supportive evidentiary material," without which preclusion would not apply.  Whereas supportive evidentiary material showing the existence of probable cause may serve as a supplemental basis for a court's finding that preclusion applies, under Oklahoma law, a plea of nolo contendere,

unto itself and as pled by a plaintiff in a subsequent civil action, mandates preclusion. It is uncontroverted that plaintiff entered plea of <u>nolo</u> <u>contendere</u> to six misdemeanor charges following the arrest at issue.[5] Based on Oklahoma state law of preclusion, the fact of plaintiff's entry of a <u>nolo</u> plea waives any irregularities in the criminal proceedings, and he is now estopped from denying the existence of probable cause at the time of his arrest.

### iv.    Qualified Immunity

Finally, defendants argue that because, as a matter of law, probable cause has been actually determined to have existed at the time of the arrest, defendants are "entitled to qualified immunity with respect to a claim for unlawful arrest under 42 U.S.C. § 1983." Dkt. # 13, at 7. Qualified immunity shields a government official from civil liability, which they are entitled to "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012); <u>see</u> <u>also</u> <u>Reeves v. Churchich</u>, 484 F.3d 1244, 1250 (10th Cir. 2007). This has been interpreted to require a "two-step sequence,"

---

[5] Plaintiff counters that the Creek County District Court cannot have determined probable cause in its hearing because the "arrest in question" in this case was not considered in the preliminary hearing, as plaintiff entered a <u>nolo</u> <u>contendere</u> plea only as to misdemeanor charges, and under Oklahoma law, "there shall be no preliminary examinations in misdemeanor cases." <u>Id.</u> at 14 (quoting OKLA. STAT. tit. 22 § 258(5)). The parties agree, however, that the "felony counts . . . were considered by the district court at the preliminary hearing in the underlying criminal case," and the facts on which both the felony and misdemeanor charges were based occurred during the course of the arrest at issue. <u>Id.</u> Ultimately, a <u>nolo</u> <u>contendere</u> plea both "admits the facts pleaded in the information," <u>Cartwright</u>, 678 F.3d at 915, and "admits the validity of th[e] charges, thus likewise establishing probable cause for the arrest on those charges, and waiving any irregularities in the criminal proceedings including lack of probable cause," <u>Delong</u>, 956 P.2d at 938-39. Oklahoma law may not normally require preliminary examinations in misdemeanor cases; however, because plaintiff's preliminary hearing concerned both his misdemeanor and felony charges and because his plea both admits the facts of the information and waives procedural irregularities, the plea remains effective in precluding relitigation of the issue of probable cause.

by which the plaintiff must make a showing: first, that "the defendant violated a constitutional right"; and second, that "the constitutional right was clearly established." Morris v. Noe, 672 F.23d 1185, 1191 (10th Cir. 2012) (quoting Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009)); Swanson v. Town of Mountain View, 577 F.3d 1196, 1199 (10th Cir. 2009). In the context of an unlawful arrest claim brought under § 1983, a court proceeds in two steps by first asking "whether the officers had probable cause to arrest" the plaintiff. Kaufman v. Higgs, 697 F.3d 1297, 3000 (10th Cir. 2012). If the court finds that the defendant officer lacked probable cause, the court then "determine[s] whether [the plaintiff's] rights were clearly established, which [it] approach[es] by asking whether the officers arguably had probable cause." Id. Given that plaintiff's plea precludes relitigation of the issue of whether probable cause existed at the time of arrest, the Court's analysis begins and ends at the first step; it need not determine whether the rights at issue were clearly established.

The issue of whether probable cause existed at the time of arrest is precluded under Oklahoma state law on the basis of plaintiff's nolo contendere plea. As probable cause was established, defendants are also entitled to qualified immunity as to this claim.[6] Therefore, defendants' motion to dismiss plaintiff's count one, for unlawful arrest in violation of the Fourth, Eighth, and Fourteenth Amendments to the Constitution, is granted.

**B.     Common Law Claim for False Imprisonment/False Arrest (Count Six)**

Defendants' motion for partial dismissal also seeks to dismiss count six for "common law false imprisonment or false arrest," which arises out of the events that took place during his arrest.

---

[6] The Court need not determine whether an alleged deprivation was committed by a person acting under color of state law because plaintiff's claim fails at the first step of the analysis, as there was no violation of a right secured by the Constitution and laws of the United States.

Dkt. # 13, at 1; Dkt. # 2-2, ¶¶ 110-12. "[R]ightly" referred to as the "'closest analogy' to an arrest without probable cause," Torres, 592 U.S. at 320 (quoting id. at 336 (Gorsuch, J. dissenting)), false imprisonment is a distinct tort from false arrest under Oklahoma law, McGlone v. Landreth, 195 P.2d 268, 271 (Okla. 1948) ("[T]here is a distinction in the manner in which causes of action for false arrest and false imprisonment arise . . . ."). As the Oklahoma Supreme Court has noted, false arrest and false imprisonment are largely indistinguishable, except for "the manner in which they arise." Alsup v. Skaggs Drug Ctr., 223 P.2d 530, 533-34 (Okla. 1949) (quoting 22 AM. JUR. p. 354 § 3); McGlone, 195 P.2d at 427 (quoting 22 AM. JUR. p. 354 § 3).

False arrest is the "unlawful restraint of an individual against his will," and in bringing a false arrest claim a plaintiff bears the s burden "to prove lack of probable cause" by affirmative evidence. Delong, 956 P.2d at 938 (quoting Irwin, 830 P.2d at 590); Roberts v. Goodner's Wholesale Foods, Inc., 50 P.3d 1149, 1151 (Okla. Civ. App. 2002); Mengert v. United States, 120 F.4th 696,715 (10th Cir. 2024); Gouskos v. Griffith, 122 F. App'x 965, 970 (10th Cir. 2005) (citing Overall v. State ex rel. Dep't of Pub. Safety, 910 P.2d 1087, 1091 (Okla. Ct. App. 1995)). "Conversely, '[p]robable cause constitutes a complete defense.'" Adamson, 774 P.2d at 479-80 (quoting Lewis v. Crystal Gas Co., 532 P.2d 431, 433 (Okla. 1974)); Roberts, 50 P.3d at 1152. Defendants argue that because plaintiff is precluded from relitigating the issue of probable cause based both on Oklahoma law of preclusion and the effect of his plea, plaintiff's false arrest claim fails as a matter of law. Dkt. # 13, at 10. The Court agrees that, as discussed supra, plaintiff's entry of a plea "admit[s] the validity of th[e] charges, thus likewise establish[es] probable cause for the arrest on th[e] charges, and waive[s] any irregularities in the criminal proceedings including lack of probable cause." Delong, 956 P.2d at 938-39 (holding that a plea of nolo contendere established probable cause and dismissing a claim

for false arrest).  Based on plaintiff's entry of his plea and absent material evidence to the contrary, plaintiff fails to state a claim upon which relief may be granted as to his claim of false arrest.

A distinct tort from false arrest, false imprisonment requires a form of confinement, which can include "taking a person into custody under an asserted legal authority," Torres, 592 U.S. at 320 (quoting RESTATEMENT OF TORTS §§ 35, 41 (A.L.I. 1934)); however, for false imprisonment "the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law," McGlone, 195 P.2d at 271 (quoting 22 AM. JUR. p. 354 § 3).  Courts interpreting claims of false imprisonment against law enforcement officers have, in some instances, construed false imprisonment claims as false arrest claims.  See, e.g., Mengert, 120 F.4th at 702 n.2; Allen v. Town of Colcord, Okla., 847 F. Supp. 2d 1276, 1288 (N.D. Okla. 2012).  Plaintiff asserts that his claims of false arrest and false imprisonment are distinct and the claim for false arrest stands alone because defendants had "no intention of bringing the person detained before a court, or of otherwise securing the administration of the law at the time of the unlawful seizures." Dkt. # 27, at 20.  However, as discussed supra, the arrest at issue constituted a single seizure for which probable cause existed. Plaintiff does not deny that, as a result of that arrest, plaintiff was "detained before a court" and received "the administration of the law." Id.  Therefore, plaintiff cannot state a claim upon which relief may be granted as to his claim of false imprisonment.

Defendants' motion to dismiss plaintiff's count six, for common law false arrest/false imprisonment is granted.

**IT IS THEREFORE ORDERED** that defendants' motion for partial dismissal of plaintiff's claims, as to counts one and six of his complaint (Dkt. # 13), is **granted**. Counts one and six are hereby dismissed.

**IT IS FURTHER ORDERED** that defendants' answer to the remaining counts in the complaint (Dkt. # 2-2) are due no later than **January 26, 2026.**

**DATED** this 12th day of January, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE